UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JACK L. JORDAN, an
individual,

            Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
LABOR

            Defendant.

NO. CV-07-5011-EFS

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

    A hearing occurred in the above-captioned matter on September 4, 2008, in Spokane.  Tom H. Foulds appeared on behalf of Plaintiff Jack L. Jordan; Rolf H. Tangvald appeared on behalf of Defendant United States Department of Labor.  Before the Court were Plaintiff's Motion for Summary Judgment (Ct. Rec. 82) and Defendant's Motion for Summary Judgment (Ct. Rec. 79).  After reviewing the submitted material and relevant authority and hearing oral argument, the Court is fully

ORDER ~ 1

informed.   This Order serves to memorialize and supplement the Court's rulings.

## I. Background

**A. EEOICPA Statutory Background**

In 2000, Congress passed the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. § 7384, *et seq*. EEOICPA provides benefits to individuals with illnesses caused by exposure to radiation and other toxic substances in the course of their work related to the nuclear weapon production and testing programs of the United States Department of Energy or its predecessor agencies.   42 U.S.C. § 7384.

EEOICPA Part B allows covered employees or their eligible survivors to receive a $150,000 lump-sum payment and medical benefits for certain illnesses from radiation, beryllium, or silica exposure while working at DOE facilities.   20 C.F.R. § 30.0.   EEOICPA Part E allows covered employees or their eligible survivors to receive lump-sum payments and medical benefits based on a worker's permanent impairment and/or calendar years of qualifying wage-loss.   *Id.*

The Department of Labor ("DOL") is primarily responsible for administering EEOICPA Part B and E claims.   Any person seeking benefits must file a claim with the DOL's Office of Workers' Compensation Programs ("OWCP").   20 C.F.R. §§ 30.100 & 30.101.   If a person claims to be a deceased employee's survivor, sufficient evidence of the claimed relationship must be furnished.

After reviewing a claim, the OWCP issues a recommended decision. 20 C.F.R. § 305.   The claimant then has sixty (60) days to file

objections with the Final Adjudication Branch ("FAB").  20 C.F.R. § 310. The FAB will consider a claimant's objections and hold a hearing, if requested, before issuing the final agency decision. 20 C.F.R. §§ 30.314 & 30.316.  An OWCP recommended decision automatically becomes the final agency decision one year after the agency receives the claimant's objections. 20 C.F.R. § 30.316(c).  This provision safeguards against unnecessary agency delay.

**B. Plaintiff's EEOICPA Claims**

On October 15, 2002, Plaintiff filed an EEOICPA Part B claim seeking benefits for his late uncle's death from lung cancer.  Plaintiff's uncle was a former worker at the Hanford Nuclear Site and qualified for EEOICPA benefits.  Plaintiff claimed he was an eligible surviving child because he had a parent-child relationship with his uncle.

On December 17, 2002, the Division of Energy Employees Occupational Illness Compensation ("DEEOIC") recommended denying Plaintiff's Part B claim for failure to establish that he is an eligible surviving child. A month later, the FAB vacated the recommended decision, remanding the claim for further development.

On April 12, 2003, Plaintiff sent additional information to the DOL, including why he considered his uncle a father.  On September 23, 2003, the Chief of the Branch of Policies, Regulations and Procedures (a division of the DOL) concluded Plaintiff, in the absence of additional information, does not qualify as an eligible surviving child.  On October 3 and 21, 2003, the DEEOIC sought additional information about Plaintiff's relationship with his uncle.  Plaintiff did not respond.

ORDER ~ 3

On June 9, 2005, Plaintiff's representative informed the DEEOIC that his client wished to file a Part E claim. The DEEOIC received Plaintiff's Part E claim the following week. On October 27, 2005, the DEEOIC requested additional documentation to show proof of adoption.

The following week on November 3, 2005, Plaintiff's representative sent a letter to the DEEOIC arguing that Plaintiff qualifies as an eligible surviving child based upon a Washington Supreme Court case released that day discussing *de facto* parentage. On November 16, 2005, the DEEOIC recommended denying Plaintiff's Part B and Part E claims. This recommendation did not fully address Plaintiff's recently raised legal arguments.

On January 12, 2006, Plaintiff objected to the recommendation and requested an oral hearing, which took place on March 30, 2006. At the hearing, Plaintiff's representative raised the *de facto* parent legal argument.

On July 15, 2006, the FAB forwarded Plaintiff's claim to the DEEOIC's Branch of Polices, Regulations and Procedures ("BPRP") requesting guidance on Plaintiff's legal arguments. On December 12, 2006, the BPRP requested a legal opinion from the Office of the Solicitor of Labor ("SOL"). On February 26, 2007, the SOL issued a legal memorandum briefing Plaintiff's arguments. The following week, the BPRP sent the legal memo to the FAB, satisfying the FAB's earlier request for legal guidance.

Meanwhile, the DEEOIC's recommended decision automatically became the final agency decision on January 17, 2007. Plaintiff sought judicial review with this Court on March 9, 2007. On April 30, 2007, the Director

ORDER ~ 4

vacated the DOL's final agency decision, remanding the case to fully consider Plaintiff's recent raised *de facto* parentage argument.  After reviewing Plaintiff's arguments, the DOL issued its final agency decision denying Plaintiff's claim for benefits on November 7, 2007. (Ct. Rec. 34.)

## II. Discussion

### A.    Standard

The Administrative Procedures Act (APA) sets forth standards governing judicial review of decisions made by federal administrative agencies. *Mountain Rhythm Res. v. FERC*, 302 F.3d 958, 963 (9th Cir. 2002).  APA section 706(2)(A) provides that a reviewing court may set aside agency decisions found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."   5 U.S.C. § 706(2)(A).  The arbitrary and capricious standard is appropriate when resolving factual disputes implicating substantial agency expertise. *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 376 (1989).  Review under the standard is narrow and the reviewing court may not substitute its judgment for that of the agency.  *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6-7 (2001); *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008).  The agency, however, must articulate a rational connection between the facts found and the conclusions made.  *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (internal quotations and citations omitted).

The reviewing court must determine whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.  *Marsh*, 490 U.S. at 378.  The court may reverse

under the arbitrary and capricious standard only if the agency relied on factors that Congress did not intend for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1078 (9th Cir. 2001); *Port of Seattle, Wash. v. F.E.R.C.*, 499 F.3d 1016, 1035 (9th Cir. 2007). Finally, an agency's decision can be upheld only on the basis of the reasoning in that decision. *Anaheim Mem'l Hosp. v. Shalala,* 130 F.3d 845, 849 (9th Cir. 1997).

**B.    Statutory Definition of Child**

EEOICPA regulations define "child" as a "recognized natural child, a stepchild who lived with an individual in a regular parent-child relationship, and an adopted child. . . ." 42 U.S.C. § 7384s(e)(3)(B). The DEEOIC has exclusive discretion to interpret this definition. 20 C.F.R. § 30.1.  Noting the expansive statutory language, the DEEOIC recently expanded "child" from its original definition to include: (1) legitimate children, and (2) posthumously born legitimate children.  (AR 506.)  As defined under the EEOICPA, "child" is, therefore, limited to biological children, stepchildren, or adopted children. *Id.*

**C.    FAB's Final Denial Decision**

Plaintiff argues that FAB's final denial decision should be vacated because it arbitrarily and capriciously failed to consider (1) enlarging the statutory definition of "child" to include *de facto* children, (2) relevant state law definitions of "child" in statutory interpretation,

ORDER ~ 6

1   and (3) the proper nature of his relationship with Ray Jordan. Defendant

2   responds that FAB's decision should not be overturned because it is

3   neither arbitrary nor capricious.

4       **1.  FAB Consideration of *de facto* Children Under the EEOICPA**

5       Plaintiff first alleges that FAB failed to consider expanding the

6   statutory definition of "child" to include *de facto* children as set forth

7   in *In re Parentage of L.B.*, 155 Wn.2d 679 (2005). (Ct. Rec. 82 at 3.)

8   Defendant responds that not only did FAB's decision consider including

9   *de facto* children, but also it extensively analyzed the proper scope of

10  "child" under the EEOCIPA. (Ct. Rec 88 at 4.)

11      In *In re Parentage of L.B.*, the Washington Supreme Court considered

12  whether a parent figure who participated in raising a non-biological

13  child can be considered a *de facto* parent and assigned legally-binding

14  visitation rights. The court concluded that an individual who is not a

15  biological, adoptive, or stepparent can be considered a *de facto* parent

16  if they satisfy a four-part test[1]. Plaintiff vehemently argues that Ray

17

18  ───────────────

19      [1] An individual must prove that: (1) the natural or legal parent of

20  the child consented to and fostered the parent-like relationship, (2)

21  the individual and the child lived together in the same household, (3)

22  the individual assumed the many obligations of parenthood without

23  expectation of financial compensation, and (4) the individual has been

24  in a parental role for a length of time sufficient to have established

25  a bonded, dependent parental relationship with the child. *In re*

26  *Parentage of L.B.*, 155 Wn.2d at 708.

ORDER ~ 7

Jordan qualifies as his *de facto* parent under *In re Parentage of L.B.*'s four-part test.

Contrary to Plaintiff's assertion, FAB's final decision did analyze *In re Parentage of L.B.*, determining that it did not apply to EEOICPA claims because (1) equitable concerns such as a child's best interests - paramount in state dependency cases - have no place in EEOICPA claims adjudication, (2) the case created and defined *parental* rights and obligations, not *children's* rights and obligations, and (3) Washington law is not controlling on the EEOICPA claims adjudication process.   FAB further noted that under DEEOIC interpretations, dependency alone is insufficient to establish "child" status.   (AR   506.)   Given DEEOIC's broad discretion to interpret the definition of "child" and FAB's lengthy consideration of *In re Parentage of L.B.*, the FAB sufficiently considered Plaintiff's *de facto* child argument and articulated a rational basis for declining to extend coverage.   FAB's decision is neither arbitrary nor capricious.

   2.   **Applicability of Washington State Law**

Plaintiff next argues that the DOL improperly abandoned Washington law as guidance for its statutory interpretation of "child" and, instead, substituted its own administrative judgment.   (Ct. Rec. 82 at 7.) Defendant responds that the alleged "abandonment" of state law as guidance  exclusively affected stepchild claims unrelated to Plaintiff's case. (Ct. Rec. 88 at 6.)

While regulatory agencies do not establish rules of conduct to last forever, an agency changing its course by rescinding a rule is obligated

ORDER ~ 8

to supply a reasoned analysis for the change. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 57.

Here, Defendant was not required to explain its 2003 procedural modification to its claims adjudication process because the modification only affected stepchild claims. Plaintiff's claim is not based on stepchild status; rather, Plaintiff insists he qualifies as a *de facto* child. Accordingly, the DOL's modifications are irrelevant to Plaintiff's claim and Defendant is not required to provide a reasoned analysis for the change.

Plaintiff similarly fails to identify any authority that requires the agency to apply Washington law in interpreting the statutory definition of "child." To the contrary, 20 C.F.R. § 30.1 provides that the Director of OWCP and his or her designees have exclusive authority to administer, interpret, and enforce EEOICPA's provisions. FAB may reasonably conclude, therefore, that Washington law is not controlling in analyzing Plaintiff's claim. (Ct. Rec. 505.)

**3.  Portrayal of Plaintiff's Relationship with Ray Jordan**

Plaintiff next argues that Defendant distorted the factual record to diminish his status as Ray Jordan's child. Defendant responds that these allegations are unfounded and denies misrepresenting, mischaracterizing, or omitting any facts.

There is no evidence to support Plaintiff's assertion that facts were distorted to diminish his relationship with Ray Jordan. Moreover, even assuming that Plaintiff and Ray Jordan exemplified a paradigmatic parent-child relationship, FAB can still deny Plaintiff's claim because he does not fall within the statutory definition of "child." There is

no evidence demonstrating that FAB's factual findings lead to an arbitrary or capricious decision.

**4.  <u>Due Process</u>**

Finally, Plaintiff argues that he has a due process right to have his *de facto* child status considered within the statutory definition because he maintained an intimate, long-term familial relationship with Ray Jordan.  Defendant again responds that Plaintiff's status and relevant familial circumstances were fully considered in the FAB decision.

Plaintiff's argument is nothing more than a restatement of his original argument, that is, that FAB failed to consider expanding the statutory definition of "child" to include *de facto* children.  For reasons articulated above, Plaintiff's claim is properly denied. Plaintiff cannot show that the FAB failed to consider his status within Ray Jordan's family or his *de facto* child argument.

**III.  CONCLUSION**

The Court recognizes and is respectful of Plaintiff's parent-child relationship with Ray Jordan.  But it is the DOL's responsibility - not the Court's - to thoughtfully consider a claimant's eligibility for the EEOICPA $150,000 lump-sum payment.[2]  The record reflects that Defendant

---

[2]Plaintiff insinuated at the hearing that Defendant deliberately stalled deciding whether coverage existed in an effort to avoid payment. Defendant squelched this suggestion by noting it is undisputed that Ray Jordan's step-son is eligible to receive the $150,000 lump-sum payment. The only question is whether this payment will be divided between

did thoughtfully consider Plaintiff's claim, deliberately and serially examining each piece of new evidence that Plaintiff provided.  Because FAB fully considered Plaintiff's arguments before denying them - which was within their authority to do - there is no basis to overturn their decision.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 82)** is **DENIED**;

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 79)** is **GRANTED**;

3. Judgment shall be entered in Defendant's favor; and

4. This file shall be **closed.**

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and provides copies to counsel.

**DATED** this 5th day of September 2008.


                    S/ Edward F. Shea
                    _____
                    EDWARD F. SHEA
                    United States District Judge

Q:\Civil\2007\5011.MSJ.wpd

Plaintiff and Mr. Jordan's step-son or not.

ORDER ~ 11